STITT v HOLLAND ABUNDANT LIFE FELLOWSHIP (ON REMAND)

Docket No. 192208. Submitted September 21, 2000, at Grand Rapids. Decided December 8, 2000, at 9:00 A.M.

Violet J. and Gilbert E. Moeller brought an action in the Ottawa Circuit Court against Holland Abundant Life Fellowship, seeking damages for injuries suffered when Violet Moeller tripped over a concrete tire stop in the parking lot of the defendant church on her way to the church for a Bible study session. A jury returned a verdict of no cause of action after it was instructed by the court, Edward R. Post, J., to consider Violet Moeller a licensee rather than an invitee with respect to the duty of care owed her by the defendant. The court awarded attorney fees to the defendant as offer of judgment sanctions on the basis that the defendant, after having rejected a mediation evaluation of $160,000, had made an offer of judgment of $25,000, to which the plaintiffs had made a counteroffer of $90,000, which the defendant had rejected. The plaintiffs appealed. During the pendency of the appeal, Violet Moeller died and Jill Stitt, personal representative of the decedent's estate, was substituted in the place of the decedent. The Court of Appeals, HOEKSTRA, P.J., and GRIFFIN and BANDSTRA, JJ., reversed and remanded for a new trial, holding that the trial court erred in finding that the plaintiffs' decedent, as a person visiting a church to attend a church function, had the status of a licensee, rather than an invitee. 229 Mich App 504 (1998). The Supreme Court reversed, holding that persons on church premises for other than commercial purposes are licensees and not invitees, and remanded the matter to the Court of Appeals for consideration of the other issues raised by the plaintiff that were not resolved in the Court of Appeals. 462 Mich 591 (2000).

On remand, the Court of Appeals *held*:

1. The plaintiffs' contention that they were denied a fair trial by reason of attorney misconduct by defense counsel in asking two of the plaintiffs' witnesses who were experts in the field of parking lot illumination questions concerning the level of illumination both in local parking lots in general and in the parking lot of plaintiffs' counsel is rejected. In each instance in which the question related to the parking lot at the office of plaintiffs' counsel, plaintiffs

objected, and either the question was withdrawn or the court sustained the objection. At no time was any further relief requested. Because the level of illumination in other parking lots in the area was relevant to the question whether the defendant should have known that an unlit lot would pose a hazard, and because the objections to questions concerning the parking lot at the office of plaintiffs' counsel were sustained and no other relief was requested, no error requiring reversal was shown.

2. The plaintiffs' contention that the court erred in admitting the videotape deposition of an expert witness that was called by the defense and who testified concerning visibility theory is also rejected. The plaintiffs objected to the testimony of that witness both on the ground that the witness was not qualified to testify as an expert and on the ground that the testimony was based on a theory that had not gained acceptance in the scientific community. The court did not abuse its discretion in finding the witness, a college professor with a Ph.D. in psychology who had worked in the area of visual perception for twenty-three years, to be an expert. There was sufficient evidence to show that the method used by the witness had gained general acceptance by experts in the field. Further, even if the testimony of the witness should not have been admitted because the theory on which the testimony was based was not generally accepted, the admission of that testimony did not affect any substantial right of the plaintiffs and, accordingly, was harmless.

3. The court did not err in admitting the testimony of the defendant's pastor that neither he nor the church staff was aware of any previous falls in the church parking lot. One of the issues at trial was whether the defendant knew or should have known of any hidden dangers. The plaintiffs had presented testimony that a fall in the church parking lot had taken place three years before the fall in this case and that the pastor had been informed of the prior fall. The court did not abuse its discretion in admitting the pastor's testimony to rebut the testimony concerning the defendant's knowledge of the prior fall, particularly in view of the fact that the court instructed the jury that it should use the pastor's testimony only with respect to its consideration of the issue of knowledge.

4. There was no cumulative effect resulting from the claimed errors that requires reversal.

5. Subsection D(3) of the offer of judgment court rule, MCR 2.405(D)(3), provides that a court may, in the interest of justice, refuse to award attorney fees under the offer of judgment rule. The interest of justice exception should be applied only in unusual circumstances. The unsettled nature of the law is such an unusual cir-

cumstance. Clearly, because the Supreme Court in its opinion in this case acknowledged that its prior decisions were less than clear concerning the precise circumstances when invitee status existed, the law was unsettled to a sufficient degree to constitute an unusual circumstance that should evoke the application of the interest of justice exception of MCR 2.405(D)(3). Further the interest of justice exception is applicable where, as here, an offer of judgment is used to insulate the party making the offer of judgment from potential mediation sanctions resulting from a denial of a mediation evaluation. Finally, because MCR 2.405 was amended after the trial in this matter to preclude an award of attorney fees as offer of judgment sanctions under these circumstances, there is now a clear public policy in this state that it is in the interest of justice not to award offer of judgment sanctions under these circumstances. Accordingly, the trial court abused its discretion in imposing offer of judgment sanctions against the plaintiffs under these circumstances.

Affirmed in part and reversed in part.

PRETRIAL PROCEDURE — OFFERS OF JUDGMENT — SANCTIONS FOR REJECTION — ATTORNEY FEES.

A court may, in the interest of justice, refuse to award attorney fees as a sanction for the rejection of an offer of judgment; attorney fees should be awarded as a sanction for the rejection of an offer of judgment unless unusual circumstances would make denial of such an award serve the interest of justice; unusual circumstances include cases where the law is unsettled and substantial damages are at issue and cases where an offer of judgment has been used to insulate the party making the offer of judgment from potential mediation sanctions resulting from that party's rejection of a mediation evaluation (MCR 2.405[D][3]).

*Ronald J. Giddy*, for the plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Elizabeth Roberts VerHey*), for the defendant.

ON REMAND

Before: HOEKSTRA, P.J., and GRIFFIN and BANDSTRA, JJ.

PER CURIAM. This case is on remand from our Supreme Court. On original submission, we reversed

the judgment of the trial court, concluding that Violet Moeller was an invitee when she tripped over a concrete tire stop in defendant's parking lot. *Stitt v Holland Abundant Life Fellowship*, 229 Mich App 504; 582 NW2d 849 (1998) (*Stitt I*). Our Supreme Court reversed and remanded for consideration of plaintiffs' remaining arguments. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591; 614 NW2d 88 (2000) (*Stitt II*). We have considered these arguments and now affirm the judgment of the lower court, but reverse the award of offer of judgment sanctions.

Plaintiffs contend that they are entitled to reversal because of the cumulative effect of (1) defense counsel's repeated attempts to introduce evidence relating to the illumination of the parking lot of plaintiff's counsel, despite the court having ruled the evidence inadmissible, (2) improper admission of expert testimony regarding visibility in the parking lot, and (3) improper admission of evidence that no one had fallen previously in the parking lot. We disagree. Because the bases for plaintiffs' claim each involve different considerations, we will address them separately.

During cross-examination of Richard Stark, an engineer called on behalf of plaintiffs to testify concerning the adequacy of lighting in defendant's parking lot, counsel for defendant asked Stark about the lighting in the parking lot of plaintiffs' counsel. Before Stark could answer, plaintiffs objected on the basis of "confidentiality" and relevance; defense counsel withdrew the question. Defense counsel again attempted to ask if Stark had a client in Holland who had a parking lot that was "darker than the bottom of the well." Plaintiffs again objected, saying that the question was

"totally irrelevant and immaterial." Counsel for defendant then attempted to rephrase the question to add that the client in question expected people to visit the premises. Again, plaintiffs objected on the grounds of relevance, and the court sustained the objection. No further relief was requested.

Later, plaintiffs called George Kruggel, an engineer who had designed between eighty and one hundred parking lots in the region,[1] to testify concerning his analysis of the amount of lighting in defendant's parking lot. Kruggel testified, on the basis of photometric readings he had taken, that defendant's parking lot had insufficient lighting. On cross-examination, defense counsel asked whether there were other parking lots in the area with no lights. After plaintiffs' objection was overruled, Kruggel testified that other such unlit parking lots existed. When defense counsel went on to ask if the parking lot of plaintiffs' counsel was unlit, plaintiffs again objected on the grounds of relevancy. The court sustained plaintiffs' objection. No further relief was requested.

In *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 102-103; 330 NW2d 638 (1982), our Supreme Court provided the following means for analyzing a claim of attorney misconduct:

> When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly

---

[1] Kruggel also testified that he had designed a large number of buildings, including "churches, schools, nursing homes, banks, and quite a wide array of different buildings." At the time of trial, he was the lighting designer for his firm.

preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted.

Although plaintiffs objected to each of the instances complained of on appeal, all but one of the objections were sustained, and no further relief was requested. In these instances, no evidence was actually elicited. To the extent that the jurors could glean that the parking lot of plaintiffs' counsel was unlit, their consideration of this evidence could have been limited by an instruction to disregard. *People v McAlister*, 203 Mich App 495, 504; 513 NW2d 431 (1994). We cannot conclude that questions of counsel that were not answered constituted misconduct requiring reversal where plaintiffs neither requested that the jury be instructed that questions of counsel are not evidence nor requested a mistrial. See *Young v Flood*, 182 Mich App 538, 544; 452 NW2d 869 (1990).

As for Kruggel's testimony that he had seen other unlit parking lots in the area, we note that, on direct testimony, Kruggel had testified regarding the number of lots he had designed in the area and further testified that his duties included lighting design. One issue in the case was whether defendant knew or should have known of the hazard posed by an unlit parking lot.[2] The condition of other lots in the area could have

---

[2] We note that there was a fact question regarding whether the lot was, in fact, lit at the time of Moeller's accident.

been relevant to whether defendant should have known that an unlit lot would pose a hazard. It was therefore appropriate for counsel for defendant to cross-examine by asking initially whether other lots in the area were unlit. However, when defense counsel sought to examine Kruggel regarding whether the parking lot of plaintiffs' counsel was lit, the objection was sustained. Again, no improper evidence was injected, and no relief, other than that received by plaintiffs, was requested. No error requiring reversal is shown.

Plaintiffs next argue that the trial court erred in admitting a video deposition of defendant's expert, John Monahan, who testified concerning visibility theory. Plaintiffs had objected to the introduction of Monahan's testimony on the grounds that he was not qualified to testify as an expert and that his opinion testimony was based on a theory that had not gained acceptance in the scientific community. Monahan, a professor at Central Michigan University, possessed a Ph.D. in psychology and had worked in the area of visual perception. His doctoral work included studies on the amount of lighting "necessary to see things." He had worked in the area of perception for the past twenty-three years. Monahan testified about contrast theory, which concerns the relative amount of light reflected from two surfaces. Specifically, Monahan had measured the contrast between the parking lot surface and the tire stop on which Moeller tripped, as well as the amount of light reflected by the tire stop. The theory on which Monahan based his opinion had been in existence for over one hundred years. Plaintiffs' expert, Richard Stark, testified that his association, the Luminating Engineering Society, had not

accepted any particular visibility model. However, he also testified that while contrast between an object and its background could be measured, other factors, such as adaptation, amount of time the object is viewed, age of the viewer, and angle of reflectance, must also be considered. Monahan provided testimony regarding each of these factors and the effect they had on visibility of the tire stop.

We review the admission or exclusion of expert testimony for abuse of discretion. *Phillips v Deihm*, 213 Mich App 389, 401; 541 NW2d 566 (1995). Expert testimony is admissible under MRE 702 if "recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Anton v State Farm Mut Automobile Ins Co*, 238 Mich App 673, 677; 607 NW2d 123 (1999). Novel scientific evidence is admissible only if it is demonstrated that the evidence has gained general acceptance in the scientific community. *Id.* at 678. This test, known as the *Davis-Frye*[3] test, places on the proponent of the evidence the burden of showing acceptance. *Id.* at 679.

Although plaintiffs' argument touches on both the question of the adequacy of Monahan's credentials and the question whether Monahan's theories had been generally accepted, their argument stresses what they consider to be Monahan's lack of qualification. Monahan began working in the area of visibility perception when studying for his doctorate and had worked in the area of human perception for twenty-three years. We conclude that his credentials suffi-

---

[3] *People v Davis*, 343 Mich 348; 72 NW2d 269 (1955); *Frye v United States*, 54 US App DC 46, 47; 293 F 1013 (1923).

ciently established his qualifications. While plaintiffs point to conflicting portions of his testimony that they believe show Monahan's lack of qualifications, their claims are relevant only to the weight to be given the testimony, not whether it should have been admitted. *People v Gambrell*, 429 Mich 401, 408; 415 NW2d 202 (1987).

As for plaintiffs' claim that defendant failed to show acceptance of the method used by Monahan, there was testimony from Monahan himself that the method had gained general acceptance by experts in his field. In addition, the method used by Monahan, which was summarized in a casebook provided by Monahan during his deposition, had been in existence for over one hundred years. While plaintiffs' expert, Stark, testified that no particular model of contrast theory had been adopted by his association, he went on to discuss factors that should be considered in determining visibility of objects, and each of these factors was discussed by Monahan in his analysis. We see no abuse of discretion in admitting Monahan's deposition testimony.

Even if we assume that Monahan's testimony should not have been admitted absent further evidence of the acceptance of the theory on which his opinion was based, we conclude that the admission of this evidence was harmless. Error in the admission of evidence is not cause for reversal unless it affects a substantial right of the party opposing admission. MRE 103. This Court has found in the past that the testimony of experts for the party opposing introduction of expert testimony may dilute the improper introduction of that testimony. See *Bourdon v Read*, 30 Mich App 681, 685-686; 186 NW2d 737 (1971).

Plaintiffs' own experts testified concerning the lighting in the parking lot. Although plaintiffs' experts had testified that the lighting in the parking lot did not meet current engineering standards, they declined to say that the lighting created an unreasonable risk of harm. There was substantial evidence that the church authorities were not aware of any falls in the parking lot before Moeller's accident. While Monahan's testimony was relevant to the issue of the visibility of the tire stop shortly after sundown, the effect of his testimony was not such that a substantial right of plaintiffs' was affected.

Plaintiffs contend that the trial court erred in admitting testimony of the pastor of the church that neither he nor the church staff was aware of any previous falls in its parking lot. We disagree. We review the admission or exclusion of evidence for abuse of discretion. *Szymanski v Brown*, 221 Mich App 423, 435; 562 NW2d 212 (1997). Plaintiffs argue that the pastor's testimony should not have been introduced to prove absence of negligence. However, one of the issues in the case was whether defendant knew or should have known of any hidden dangers. Violet Moeller was, as the trial court concluded, a licensee. Defendant owed a duty to Moeller only to warn her of hidden dangers of which it knew or had reason to know, if Moeller did not know of the dangers. *Stitt II*, *supra* at 596. Patty DeVries had testified that she fell over a tire stop in defendant's parking lot in 1986, three years before Violet Moeller's accident, and that she had told the pastor. The pastor's testimony was relevant to rebut DeVries' testimony, which, if believed, could lead a jury to conclude that defendant knew of the problem with the tire stops. Further, the

court gave an instruction to the jury limiting its consideration of this evidence to the issue of knowledge, thus minimizing the possibility that the jury would consider this evidence for an improper purpose. MRE 105; *Haberkorn v Chrysler Corp*, 210 Mich App 354, 367; 533 NW2d 373 (1995). We see no abuse of discretion in the admission of this testimony.

Further, we reject plaintiffs' cumulative error claim. We recognize that, at times, the cumulative effect of a number of minor errors may require reversal. See *People v Cooper*, 236 Mich App 643, 660; 601 NW2d 409 (1999). However, in this case, the only arguable error was the admission of Monahan's testimony. We have concluded that, even if the admission of this evidence was error, it was harmless. No error requiring reversal is shown.

Finally, plaintiffs argue that the trial court abused its discretion by awarding offer of judgment sanctions against them. Defendant made an offer of judgment to plaintiffs in April 1992, offering to pay $25,000. This offer was refused by plaintiffs. In July 1994, the case went to mediation; the panel awarded $160,000 to plaintiffs. Plaintiffs accepted the mediation evaluation, but defendant rejected it. In November 1994, defendant made another offer of judgment for $25,000. Plaintiffs timely made a counteroffer of judgment for $90,000. The offer was rejected. The case went to trial, and the jury found no liability on the basis that defendant breached no duty of care owed to plaintiffs' decedent as a licensee. The trial court entered a judgment of no cause of action consistent with the jury's verdict. Defendant moved for an award of offer of judgment sanctions. The court awarded defendant attorney fees in the amount of $25,937.35.

We agree with plaintiffs that under the unusual circumstances of this case the "interest of justice" exception, MCR 2.405(D)(3), applies and the trial court abused its discretion in ruling otherwise.

This Court's most recent decision construing MCR 2.405(D)(3) is *Reitmeyer v Schultz Equipment & Parts Co, Inc*, 237 Mich App 332; 602 NW2d 596 (1999). In *Reitmeyer*, this Court followed *Luidens v 63rd Dist Court*, 219 Mich App 24; 555 NW2d 709 (1996), for the proposition that the "interest of justice" exception should be applied only in "unusual circumstances." While the exception invokes the court's equity powers, the exception must not be read so broadly that it effectively nullifies the general rule favoring the award of offer of judgment sanctions:

> First, in *Luidens v 63rd Dist Court*, 219 Mich App 24, 31; 555 NW2d 709 (1996), this Court interpreted the "interest of justice" exception of MCR 2.405(D)(3), which states that "[t]he court may, in the interest of justice, refuse to award an attorney fee under this rule." This provision of the offer of judgment rule was an exception to the general rule that actual costs must be paid if the parties met certain prerequisites, MCR 2.405(D)(1) and (2). After considering the context of the language in the exception, and the purpose of MCR 2.405—to encourage settlement and to deter protracted litigation—this Court commented on the "exceptional nature" of the provision and determined that the "interest of justice" would be implicated only in "unusual circumstances." *Id.* at 33, 37. Absent these "unusual circumstances," the general rule would apply. This Court was particularly concerned with limiting the exception because of its susceptibility to broad interpretations that could potentially consume the general rule and thus nullify MCR 2.405's purpose of encouraging settlement. *Id.* at 33. [*Reitmeyer*, *supra* at 338-339.]

In surveying the case law for guidance regarding factors that *do* fit within the "interest of justice" exception, the *Luidens* Court, *supra* at 35-36, adopted the following portion of Judge HARRISON's concurring opinion in *Nostrant v Chez Ami, Inc*, 207 Mich App 334, 343; 525 NW2d 470 (1994), wherein Judge HARRISON explained that the exception should be applicable "*where the law is unsettled* and substantial damages[4] are at issue . . . ." (Emphasis added.)

This case presents an "unusual circumstance" because of the unsettled nature of the law. In particular, our Supreme Court in its opinion in this case, *Stitt II, supra* at 598, acknowledged "our prior decisions have proven to be less than clear in defining the precise circumstances under which a sufficient invitation has been extended to a visitor to confer 'invitee' status." Further, because the Supreme Court in *Preston v Sleziak*, 383 Mich 442; 175 NW2d 759 (1970), had applied 2 Restatement Torts, 2d, § 332, p 176, the Court in *Stitt II, supra* at 603, held: "*to the extent* Preston *purported to adopt the Restatement definition, and this could be properly considered a binding holding, we overrule* Preston." (Emphasis added.) Because the law has changed or has been clarified during the course of the appeals in this case, we hold that an "unusual circumstance" exists. Accordingly, the "interest of justice" exception, MCR 2.405(D)(3), is implicated.

The second "unusual circumstance" is the change in the offer of judgment rule and the gamesmanship

---

[4] Substantial damages are at issue in the present case. Decedent's medical bills alone total over $67,000.

that occurred by the offer of judgment made by defendant after the mediation evaluation.[5] Although not applicable to the present case, MCR 2.405(E)[6] now provides:

Relationship to Case Evaluation. Costs may not be awarded under this rule in a case that has been submitted to case evaluation under MCR 2.403 unless the case evaluation award was not unanimous.

Here, defendant rejected a $160,000 mediation evaluation and subsequently made an offer of judgment of only $25,000. The gamesmanship that occurred is precisely the type that the amended offer of judgment rule was intended to remedy. Again, as this Court stated in *Reitmeyer, supra* at 341-342:

---

[5] We agree with Judge (now Justice) TAYLOR's observations regarding the reliance on the mediation evaluation as a benchmark for the reasonable value of a claim:

This reliance on the mediation evaluation as a benchmark of reasonableness is appropriate because it provides "an apparently meaningful understanding of both the merits and potential value of [a] claim." *Parkhurst Homes, Inc v McLaughlin*, 187 Mich App 357, 364-365; 466 NW2d 404 (1991). [*Nostrant, supra* at 340 (opinion by TAYLOR, J.).]

See also *Parkhurst Homes, supra* at 364-365:

Mediation, for instance, is typically conducted shortly before trial and after discovery has been completed. Further, the evaluation amount is determined by a disinterested mediation panel. Thus, if a party decides to reject mediation, at the risk of exposure for future costs, it has at least made its rejection with an apparently meaningful understanding of both the merits and potential value of its claim.

[6] MCR 2.405(E) was amended substantively, effective October 1, 1997. The most recent amendment, effective August 1, 2000, changed the terminology from "mediation" to "case evaluation."

Accordingly, we next turn to the purpose of MCR 2.405, and specifically to the purpose of the amendment of subsection E, which is the subsection at issue under the MCR 1.102 exception here. As in *Luidens*, we must keep in mind that the purpose of MCR 2.405 is "to encourage settlement and to deter protracted litigation." *Luidens, supra* at 31 (citation omitted). Indeed, in keeping with this overall purpose, the Supreme Court amended MCR 2.405(E), effective October 1, 1997, because the Court determined that the offer of judgment rule was actually undermining the mediation process under MCR 2.403. Report of Supreme Court Mediation Rule Committee, 451 Mich 1205, 1206 (1995). The Supreme Court reported:

"[T]he offer of judgment procedure gives a party a way of avoiding mediation sanctions, or at least of substituting the potential for offer of judgment sanctions, which may be more favorable to that party. The typical situation is one in which Party A has accepted the mediation award (and thus cannot be subject to sanctions), but Party R has rejected, and would be potentially liable for sanctions if an unfavorable verdict ultimately results. The offer of judgment procedure gives R an opportunity to make A potentially subject to offer of judgment sanctions, and to avoid such vulnerability itself if A does not make a counteroffer. . . . [*Id.* at 1232-1233.]"

Therefore, the committee determined that in order to reduce gamesmanship, the offer of judgment costs provision should be used only in conjunction with mediation where a mediation award was not unanimous and thus mediation sanctions were not available under MCR 2.403. 451 Mich 1233.

Further, in *Luidens, supra* at 35, we recognized that the "interest of justice" exception *does* apply to such gamesmanship:

Case law also offers some guidance regarding factors that *do* fit within the "interest of justice" exception. *The "interest of justice" exception appears to be directed at remedying the possibility that parties might make offers of judg-*

*ment for gamesmanship purposes, rather than as a sin-cere effort at negotiation.* This Court has noted that counsel might make a token offer of judgment after an unfavorable mediation evaluation to avoid mediation sanctions under MCR 2.403 or make a de minimus offer of judgment early in a case in the hopes of tacking attorney fees to costs if successful at trial. *Sanders* [*v Monical Machinery Co*, 163 Mich App 689,] 692 [;415 NW2d 276 (1987)]. The *Sanders* Court held that there should be "some flexibility in order that a trial judge can prevent injustice both ways, but favoring the granting of such fees." *Id.* MCR 2.405's purpose of encouraging settlement is not furthered by awarding attorney fees when gamesmanship of this sort occurs. Therefore, evidence of such gamesmanship, e.g., as demonstrated by comparisons of offers to the mediation evaluation and jury verdict, constitutes a relevant factor in determining whether the exception applies. See *Nostrant v Chez Ami, Inc*, 207 Mich App 334, 340; 525 NW2d 470 (1994). [Emphasis in original and emphasis added.]

In the present case, although the jury returned a verdict of no liability on the basis of decedent's status as a licensee, defendant's offer of judgment of $25,000 was less than sixteen percent of the $160,000 mediation evaluation. Further, defendant's offer was less than forty percent of decedent's $67,000 medical expense damages. Finally, in light of the change in the offer of judgment rule that no longer permits such an offer to be made after a unanimous mediation evaluation, it is now against our public policy to award offer of judgment sanctions under these circumstances.

In our view, the combination of the two unusual circumstances compels the invocation of the interest of justice exception, MCR 2.405(D)(3). Accordingly, we reverse and hold that the trial court abused its

discretion in awarding offer of judgment sanctions against plaintiffs.

Affirmed in part and reversed in part. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.