BRAGAN v SYMANZIK

Docket No. 247287. Submitted June 9, 2004, at Detroit. Decided August 19, 2004, at 9:10 A.M. Leave to appeal sought.

Valentine Bragan, by his next friend Robert Bragan, brought a premises liability action in the Genesee Circuit Court against Eugene Symanzik, Carolyn Symanzik, and Symanzik's Berry Farms. The plaintiff alleged claims of negligence, failure to supervise, and failure to warn with respect to the use of a Jacob's Ladder by child invitees on their premises. The court, Geoffrey L. Neithercut, J., granted summary disposition for the defendants, ruling that the danger from the Jacob's Ladder and the lack of straw underneath it were open and obvious, and that the use of the Jacob's Ladder by child invitees was not a special aspect removing it from the open and obvious doctrine. The plaintiff appealed.

The Court of Appeals held:

The trial court erred by granting the defendants summary disposition. The defendants, as landowners, owe a heightened duty of care to the plaintiff as a child invitee. That duty of care is considered from the perspective of a reasonably prudent minor of like age, mental capacity, and experience rather than the perspective of a reasonably prudent adult. Under that standard, although the plaintiff understood that he could fall from the ladder and that there might have been a lack of straw underneath to cushion the fall, it cannot be determined as a matter of law that the plaintiff, or other child invitees, would have appreciated the risk of injury from falling into the scant amount of straw underneath the ten-foot high rope ladder. Rather, it is for the jury to determine whether there was an open and obvious condition and, if so, whether the condition involves a special aspect that removes it from the open and obvious doctrine in light of targeted child invitees.

Reversed and remanded for further proceedings.

MURPHY, P.J., concurring, agreed with the reversal of the order granting summary disposition for the defendants and the remand for a trial on the basis of a slightly different analysis. In applying the open and obvious danger doctrine in a situation involving a

child invitee and premises designed and intended for the use of child invitees, the appropriate test is whether the child was actually aware of the open and obvious danger or whether the danger was so open and obvious that a reasonably prudent child invitee of like age would be reasonably expected to discover the danger. In this case, there were two dangers attendant with this Jacob's Ladder. The first was the danger of falling and the second was the amount of straw necessary to safely cushion a fall. The plaintiff knew, and a reasonably prudent child of like age would have known, of the danger of falling from the Jacob's ladder. However, a question of fact exists regarding whether the plaintiff or a reasonably prudent child of like age would have been aware, of a lack of straw to safely cushion a fall. If a jury finds that the danger concerning the straw was open and obvious, it would then have to consider whether a special aspect existed to render the condition unreasonably dangerous despite its open and obvious nature.

NEGLIGENCE — PREMISES LIABILITY — CHILD INVITEES — OPEN AND OBVIOUS DANGER DOCTRINE.

A premises possessor is generally not required to protect a child invitee from open and obvious dangers; whether a danger is open and obvious is to be determined from the perspective of a reasonably prudent minor of like age, mental capacity, and experience; however, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to prevent child invitees from that risk.

*Mindell, Malin & Kutinsky* (by *Brian A. Kutinsky*) for the plaintiff.

*Moblo & Fleming, P.C.* (by *Richard E. Moblo* and *Cheryl L. Ronk*), for the defendant.

Before: MURPHY, P.J., and JANSEN and COOPER, JJ.

COOPER, J. Plaintiff Valentine Bragan appeals as of right the trial court's order dismissing his claims of negligence, failure to supervise, and failure to warn against defendants Eugene and Carolyn Symanzik and Symanzik's Berry Farms, pursuant to MCR

2.116(C)(10) in this premises liability action. Plaintiff urges this Court to find that plaintiff's age is relevant to the determination that a dangerous condition is open and obvious. We find that landowners owe a special duty of care to child invitees, and therefore, reverse and remand for further proceedings.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff, an eleven-year-old boy, was injured at defendants' facility when he fell from a "Jacob's Ladder."[1] Defendants constructed the Jacob's Ladder in the "Fun Barn" by tying the top of the ladder to eaves ten feet in the air. The object of the Jacob's Ladder is to climb to the top and ring a bell, but 90% of climbers fall.[2] Recognizing the danger of a fall from such a height, defendants placed bales of straw under the ladder in the beginning of the busy season. As the bales broke apart, defendants maintained piles of straw under the ladder two feet deep. Defendants testified that they checked the depth of the straw on an hourly basis to ensure the safety of the attraction.

On the day of the accident, plaintiff accompanied his parents, Robert and Suzanna Bragan, to the Symanzik Berry Farms. Unsupervised by his parents, plaintiff and a friend went into the barn to climb the Jacob's Ladder. After waiting in line, plaintiff climbed the ladder to the top and began to descend. About halfway down, plaintiff fell and fractured both wrists when he hit the barn floor. Plaintiff and his father testified that there was barely enough straw to cover the ground under the

---

[1] A Jacob's Ladder is constructed of rope with wood plank rungs. The ladder is narrow at the top and widens as it reaches the ground. As described at the motion hearing held on February 10, 2003, the ladder is designed to twist and sway and be difficult to climb.

[2] Deposition of Carolyn Symanzik, November 1, 2002.

ladder. Furthermore, defendants had not posted an employee in the barn to supervise the children, and plaintiff and his father were unable to locate anyone for assistance.

Defendants moved for summary disposition of plaintiff's claims pursuant to MCR 2.116(C)(10), arguing that the danger from the ladder and the lack of straw underneath was open and obvious. Plaintiff contended that a child could either not appreciate such a danger or that defendants owed a special duty of care, as the ladder was created for their child business invitees. The trial court disagreed and granted defendants' motion. The trial court found that both the danger from the Jacob's Ladder and the lack of straw were open and obvious, and therefore not unreasonably dangerous. The court also declined to find that the use by children of the Jacob's Ladder was a special aspect removing the condition from the open and obvious doctrine.

## II. LEGAL ANALYSIS

We review a trial court's determination regarding a motion for summary disposition de novo.[3] A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim.[4] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in [the] light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists."[5] Summary disposition is appropriate only if there are no

---

[3] *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001).

[4] *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 397; 605 NW2d 685 (1999).

[5] *Singer v American States Ins*, 245 Mich App 370, 374; 631 NW2d 34 (2001).

genuine issues of material fact, and "the moving party is entitled to judgment as a matter of law."[6]

### A. DUTY OF CARE TO MINORS

It is well-established under Michigan law that minors are not held to the same standard of care as adults. Minors are required only to exercise "that degree of care which a *reasonably careful minor* of the age, mental capacity and experience" of other similarly situated minors would exercise under the circumstances.[7] Likewise, reasonable care requires a person to "exercise greater vigilance" when he knows or should know that children are nearby as "children act upon childish instincts and impulses."[8]

Landowners owe a heightened duty of care to known child trespassers. Normally, the only duty owed to a trespasser is to refrain from wanton and willful misconduct.[9] Pursuant to the attractive nuisance doctrine, however, the landowner is liable for harm caused by a dangerous artificial condition located where children are known to trespass if children would not likely realize the danger and the owner fails to use reasonable care to eliminate a danger whose burden outweighs its benefit.[10] In *Taylor v Mathews*,[11] this Court determined that "there is no fixed age at which a child does and can

---

[6] *MacDonald v PKT, Inc,* 464 Mich 322, 332; 628 NW2d 33 (2001).

[7] SJI2d 10.06 (emphasis added). See also *Fire Ins Exch v Diehl,* 450 Mich 678, 688; 545 NW2d 602 (1996), overruled in part on other grounds *Wilkie v Auto-Owners Ins Co,* 469 Mich 41; 664 NW2d 776 (2003); *Stevens v Veenstra,* 226 Mich App 441, 443; 573 NW2d 341 (1997).

[8] SJI2d 10.07.

[9] *Stitt v Holland Abundant Life Fellowship,* 462 Mich 591, 596; 614 NW2d 88 (2000), On Rem 243 Mich App 461; 624 NW2d 427 (2000).

[10] *Pippin v Atallah,* 245 Mich App 136, 146 & n 4; 626 NW2d 911 (2001), quoting 2 Restatement Torts, 2d, § 339. See also *Gilbert v Sabin,* 76 Mich App 137, 141-142; 256 NW2d 54 (1977).

[11] *Taylor v Mathews,* 40 Mich App 74; 198 NW2d 843 (1972).

be expected to realize any particular risk, as a matter of law."[12] Accordingly, it was a question for the jury whether the child trespasser could realize the risk of diving into the defendant's gravel pit.[13]

Landowners also owe a heightened duty of care to child licensees. Normally, "[a] landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved."[14] In *Klimek v Drzewiecki*,[15] this Court found that landowners owe a duty of "reasonable or ordinary care to prevent injury to the child" licensee.[16]

This Court recently explained the necessity of imposing a heightened duty of care by landowners to child licensees as follows:

> "If the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risk involved in it. On the other hand, the possessor should realize that the fact that a dangerous condition is open to the perception of child licensees may not be enough to entitle him to assume that they will appreciate the full extent of the risk involved therein."[17]

In *Kosmalski v St. John's Lutheran Church*, the minor plaintiff was injured by shattered glass when a younger child opened a glass door against the plaintiff's extended

---

[12] *Id.* at 91-92.

[13] *Id.* at 92-93.

[14] *Stitt, supra* at 596.

[15] *Klimek v Drzewiecki*, 135 Mich App 115; 352 NW2d 361 (1984).

[16] *Id.* at 120.

[17] *Kosmalski v St. John's Lutheran Church*, 261 Mich App 56, 67; 680 NW2d 50 (2004), quoting 2 Restatement Torts, 2d, § 342, comment b, p 210. See also *Pigeon v Radloff*, 215 Mich App 438; 546 NW2d 655 (1996), nullified sub nom *Pigeon v Allied Pools & Spas*, 451 Mich 885 (1996).

arm.[18] Whether the glass door presented an unreasonable risk of harm depended on the age of the licensee.

> Because children could use this door to access the activity room and children are unlikely to appreciate the risk of harm that may result from the shattering of a nonsafety-glass door, we conclude that plaintiffs have established a genuine issue of material fact regarding whether the door at issue here involved an unreasonable risk of harm.[19]

Pursuant to the Restatement approach, landowners are liable to child licensees and invitees in any situation in which they would be liable to child trespassers.[20] Comments *b* and *c* to § 343B are especially instructive:

> *b.* Where the child is not upon the land as a trespasser, but is a licensee or an invitee, the possessor of the land is no less obligated to anticipate and take into account his propensities to inquire into or to meddle with conditions which he finds on the land, his inattention, and his inability to understand or appreciate the danger, or to protect himself against it. . . .

> * * *

> *c.* Because of his status as a licensee or an invitee, the child may be entitled to greater protection than that afforded to a trespasser. This Section is intended to say only that he is entitled to at least as much.[21]

### B. OPEN AND OBVIOUS DOCTRINE

Our courts have never addressed whether child invitees are entitled to a heightened duty of care. As a general rule, "a premises possessor owes a duty to an

---

[18] *Kosmalski, supra* at 58.

[19] *Id.* at 67.

[20] 2 Restatement Torts, 2d, § 343B.

[21] *Id.,* comments b and c, p 223.

invitee to exercise reasonable care to protect the invitee
from an unreasonable risk of harm caused by a danger-
ous condition on the land."[22] An invitor is protected from
liability, however, if the danger is open and obvious.[23]
Michigan's open and obvious doctrine was based ini-
tially on the Restatement of Torts.[24] Under the Restate-
ment approach, a premises possessor is not liable for
harm caused by known or obvious dangers "unless the
possessor should anticipate the harm despite such
knowledge or obviousness."[25] A possessor must still
warn or protect an invitee against open and obvious
dangerous conditions when the possessor should antici-
pate the harm.[26]

However, in *Lugo v Ameritech Corp*, our Supreme
Court replaced the Restatement approach with a spe-
cial aspects analysis as follows:

> [T]he general rule is that a premises possessor is not
> required to protect an invitee from open and obvious
> dangers, but if special aspects of a condition make even an
> open and obvious risk unreasonably dangerous, the pre-
> mises possessor has a duty to undertake reasonable pre-
> cautions to protect invitees from that risk.[27]

A special aspect exists when the danger, although open
and obvious, is unavoidable or imposes a "uniquely

---

[22] *Lugo v Ameritech Corp*, 464 Mich 512, 516; 629 NW2d 384 (2001),
citing *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185
(1995).

[23] *Lugo, supra* at 516, citing *Riddle v McLouth Steel Products Corp*, 440
Mich 85, 96; 485 NW2d 676 (1992).

[24] *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 336-337; 683
NW2d 573 (2004) (CAVANAGH, J., concurring in part and dissenting in
part), citing *Lugo, supra* at 528 (CAVANAGH, J., concurring), *Bertrand,
supra* at 609, and *Perkoviq v Delcor Homes Lake Shore Pointe, Ltd*, 466
Mich 11, 16; 643 NW2d 212 (2002).

[25] 2 Restatement Torts, 2d, § 343A, p 218. See also *Mann, supra* at 337
(CAVANAGH, J., concurring in part and dissenting in part).

[26] 2 Restatement Torts, 2d, § 343A, comment f, p 220.

[27] *Lugo, supra* at 517.

high likelihood of harm or severity of harm."[28] Pursuant to *Lugo*, a court must "focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff" or other idiosyncratic factors related to the particular plaintiff.[29]

The Supreme Court recently solidified this novel legal premise in *Mann v Shusteric Enterprises, Inc*, in which plaintiff visited the defendant bar during a blizzard.[30] After the defendant served the plaintiff nine drinks in a three-hour period, the visibly intoxicated plaintiff exited the bar.[31] The plaintiff slipped, fell, and was injured on ice and snow that the defendant had allowed to accumulate in the parking lot.[32] The Supreme Court held that courts must examine whether a danger is open and obvious, and whether special aspects render an open and obvious condition unreasonably dangerous, from the perspective of "a reasonably prudent person."[33] Whether a dangerous condition is open and obvious is "not dependent on the characteristics of a particular plaintiff . . . ."[34] In so finding, it vacated a jury award in favor of the plaintiff, finding that "[a] visibly intoxicated person is held to the same standard of reasonable conduct as a sober person."[35] The Supreme Court also invalidated the standard jury instruction pertaining to a possessor's duty to warn an invitee of dangerous conditions[36] as the language did not comport with *Lugo*.[37]

---

[28] *Id.* at 518-519.

[29] *Id.* at 523-524.

[30] *Mann, supra* at 324.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 328-329.

[34] *Id.* at 329 n 10.

[35] *Id.* at 329.

[36] M Civ JI 19.03.

[37] *Mann, supra* at 331-332.

Taken to its logical conclusion, the cases that followed *Lugo* disallowed liability to individuals laden with bulky and heavy items, limited by physical disabilities, or burdened by crutches and canes. The Michigan Supreme Court recently denied leave to appeal in *Sidorowicz v Chicken Shack, Inc*,[38] in which a panel of the Court of Appeals rejected the premises liability claim of a blind restaurant patron who slipped on water on the restroom floor, holding:

> Plaintiff was unable to see this condition because of his blindness, but this condition would have been open and obvious to an ordinarily prudent person. No evidence has been presented indicating that the "special aspects" of the unsafe condition would remove this case from the open and obvious doctrine.[39]

### C. DUTY OF CARE TO MINOR INVITEES

We are, of course, duty bound to follow our Supreme Court's decisions in *Lugo* and *Mann*. However, even the Michigan Supreme Court has yet to address the open and obvious doctrine as it relates to children. Accordingly, this Court now finds, based on a long line of cases establishing the duty of care owed to child trespassers and licensees and our history of treating children differently from adults under the law, that landowners owe a heightened duty of care to child invitees.

As noted earlier, children are not held to the same standard of care as adults. Children under the age of

---

[38] *Sidorowicz v Chicken Shack, Inc,* 469 Mich 912 (2003).

[39] *Sidorowicz v Chicken Shack, Inc,* unpublished opinion per curiam of the Court of Appeals, issued January 17, 2003 (Docket No. 239627), slip op at 3. We cannot help but note Justice CAVANAGH's dissent of the denial of leave: "My fellow justices . . . have clearly stumbled over what is so plain in this case—what is open and obvious to the sighted is *not necessarily open and obvious to the blind.*" *Sidorowicz, supra* at 912 (CAVANAGH, J., dissenting) (emphasis in original).

seven are presumptively incapable of committing negligent or criminal acts or intentional torts.[40] In negligence actions, a child over the age of seven is required only to act as "a minor of similar age, mental capacity, and experience would conduct himself," unless engaging in an adult activity.[41]

In *Fire Ins Exch v Diehl*, the Michigan Supreme Court found that an exclusionary clause in an insurance contract barring coverage for an injury that "may reasonably be expected to result from the intentional or criminal acts of an insured person" applied differently to children than adults.[42] It is a question of fact for the jury whether a result is reasonably foreseeable to a child of similar "age, ability, intelligence and experience."[43] In so finding, the Supreme Court noted that "[t]he reasonable expectation is for a child to be held to a lesser standard of foreseeability than an adult."[44]

As their age, mental capacity, and ability to foresee the consequences of their acts are lesser than that of adults, children receive different treatment under other aspects of the law as well. Minors may only sue and be sued through a court-appointed next friend.[45] Michigan even handles minors who have committed criminal offenses under a separate Juvenile Code with the purpose of ensuring that minors "receive the care, guidance, and control . . . that is conducive to the minor's

---

[40] *Queen Ins Co v Hammond*, 374 Mich 655, 657-658; 132 NW2d 792 (1965); see also *Burhans v Witbeck*, 375 Mich 253, 255; 134 NW2d 225 (1965) (finding children under seven incapable of contributory negligence).

[41] *Stevens, supra* at 443.

[42] *Fire Ins Exch, supra* at 684, 688.

[43] *Id.* at 688, quoting *Burhans, supra* at 255.

[44] *Id.*

[45] MCR 2.201(E)(1).

welfare and the best interests of the public."[46] Rather than convict juvenile offenders in a criminal trial, minors under the age of seventeen are tried in delinquency proceedings in the family division of the circuit court unless the prosecutor successfully petitions to try the juvenile as an adult for an enumerated offense.[47]

Based on this long history of treating children differently under the law and entitling child trespassers and licensees to a heightened duty of care, we find the instant case legally distinguishable from the line of open and obvious cases involving adult invitees. Landowners owe the greatest duty of care to invitees as a class. Even the Restatement of Torts, upon which Michigan's open and obvious doctrine was originally based, recognizes that child invitees are entitled to greater protection because of their "inability to understand or appreciate the danger, or to protect [themselves] against it."[48] It would, therefore, be illogical to find that child invitees are entitled to less protection than child licensees or trespassers. Furthermore, as minors in Michigan are only held to the standard of care of "a reasonably careful minor,"[49] it would be similarly illogical to hold child invitees to the standard of an objective, reasonably prudent person; i.e., an adult. Accordingly, we must consider whether a dangerous condition would be open and obvious to a reasonably careful minor; that is, whether the minor would discover the danger and appreciate the risk of harm.

Plaintiff testified that he did witness the ladder move and sway and other children fall off. Plaintiff understood that he could fall and he could have noticed the

---

[46] MCR 3.902(B)(1).

[47] MCL 712A.2(a); see also MCR 3.914(B).

[48] 2 Restatement Torts, 2d, § 343B, comment b, p 223.

[49] SJI2d 10.06.

lack of straw underneath the ladder before climbing. It does not necessarily follow that plaintiff, or other child invitees, would have appreciated the risk of injury from falling into the scant amount of straw underneath a ten-foot high rope ladder. Whether a child could appreciate the particular risk is, accordingly, a question for a jury.[50] Only a jury can determine whether the Jacob's Ladder and lack of straw amounted to open and obvious dangerous conditions in the eyes of a child and, if open and obvious, whether the condition was unreasonably dangerous in light of the targeted youthful audience.

Plaintiff created a genuine issue of material fact regarding defendants' liability, and summary disposition in this case was unwarranted. We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

JANSEN, J., concurred.

MURPHY, P.J. (*concurring*). I concur with the majority opinion reversing the trial court's order granting summary disposition in favor of defendants and remanding the case for trial. Genuine issues of material fact exist and reasonable minds could differ on pertinent issues, thereby requiring resolution by a jury. I write separately to voice my own, slightly different analysis that includes addressing this Court's decision in *Stopczynski v Woodcox,* 258 Mich App 226; 671 NW2d 119 (2003).

### I. BASIC FACTS

Plaintiff Valentine Bragan, by his next friend and stepfather Robert Bragan, appeals as of right the trial court's order summarily dismissing his claims against

---

[50] See *Taylor, supra* at 91-92.

defendants pursuant to MCR 2.116(C)(10) in this premises liability action. Plaintiff, who was eleven years old at the time of the accident giving rise to this litigation, was injured when he fell from a "Jacob's Ladder" onto a barn floor that was alleged to have been not covered with the amount of straw necessary to safely cushion falls from the ladder. The trial court dismissed the action, concluding that the danger of falling from the ladder and the placement of too little straw were open and obvious and that no special aspects existed. The court's conclusion was predicated on a finding that the documentary evidence reflected that plaintiff and his parents were aware of both the danger of falling from the ladder and the lack of adequate straw.

In my opinion, the question whether the danger was open and obvious must be evaluated from the perspective of a reasonable person for whose use the ladder was generally intended, here children. Genuine issues of fact exist and reasonable minds could differ with respect to whether the danger was open and obvious to a reasonably prudent child of like age. Further, assuming it necessary to reach the issue, whether a "special aspect" exists, rendering the condition unreasonably dangerous despite the open and obvious nature of the alleged danger, must be determined by a jury because issues of fact abound and reasonable minds could differ.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND C(10) PRINCIPLES

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Dressel v Ameribank,* 468 Mich 557, 561; 664 NW2d 151 (2003). Issues or questions of law are also reviewed de novo. *Id.*

MCR 2.116(C)(10) provides for summary disposition where there is no genuine issue with respect to any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact and the moving party is entitled to judgment as a matter of law. *Quinto v Cross & Peters Co,* 451 Mich 358, 362; 547 NW2d 314 (1996). In addition, all affidavits, pleadings, depositions, admissions, and other documentary evidence filed in the action or submitted by the parties are viewed in a light most favorable to the party opposing the motion. *Id.* Where the burden of proof on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in the pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. *Id.* Where the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *Id.* at 363. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003) (citations omitted).

### B. APPLICABLE NEGLIGENCE PRINCIPLES AND DISCUSSIONOF LAW

The elements necessary to establish a cause of action for negligence are (1) duty, (2) general standard of care, (3) specific standard of care, (4) cause in fact, (5) legal or proximate cause, and (6) damages. *Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977). A premises owner owes, in general, a duty to an invitee to exercise

reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. *Lugo v Ameritech Corp, Inc,* 464 Mich 512, 516; 629 NW2d 384 (2001). This duty, however, does not generally encompass removal of open and obvious dangers. *Id.* Where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, the invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee. *Id.,* quoting *Riddle v McLouth Steel Products Corp,* 440 Mich 85, 96; 485 NW2d 676 (1992).

Whether a particular danger is open and obvious is dependent on whether it is reasonable to expect an average user of ordinary intelligence to discover the danger on casual inspection. *Eason v Coggins Mem Christian Methodist Episcopal Church,* 210 Mich App 261, 264; 532 NW2d 882 (1995). In determining whether an alleged dangerous condition is open and obvious, such a determination focuses on the characteristics of a reasonably prudent person. *Mann v Shusteric Enterprises, Inc,* 470 Mich 320, 329 n 10; 683 NW2d 573 (2004). Because the test is objective, courts do not examine whether a plaintiff should have known that the condition was hazardous, but whether a reasonable person in his position would foresee the danger. *Joyce v Rubin,* 249 Mich App 231, 238-239; 642 NW2d 360 (2002). "In sum, the general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo, supra* at 517.

Having set forth the general relevant principles governing this negligence action, the issue posed to us today concerns the effect on the open and obvious danger doctrine of circumstances in which a child invitee is injured on premises designed and intended to be utilized by children.[1] I conclude that the appropriate test, under such circumstances, involves determining whether the child was actually aware of the open and obvious danger or whether the danger was so open and obvious that a *reasonably prudent child invitee of like age* might reasonably be expected to discover the danger. I find support for this standard in *Moning.*

In *Moning, supra* at 444-446, our Supreme Court made the following general observations regarding children and tort law:

> The obligation "to guard or secure objects which are dangerous to children" arises "because of the likelihood of their own intermeddling". Persons dealing with children must "take notice of the ordinary nature of young boys, their tendency to do mischievous acts, and their propensity to meddle with anything that came in their way".
>
> * * *
>
> *Special rules for children are not unusual.* The attractive nuisance doctrine, an exception to the general rule

---

[1] Defendant Eugene Symanzik testified:

*Q.* And this ladder was for children to climb on?

*A.* Yes.

* * *

*Q.* So the object would be for the children to climb up the ladder and ring a bell?

*A.* Right, yes.

limiting the liability of landowners for injuries to trespass-
ers, is based on the child's inability to appreciate danger
and his inclination to explore without regard to the risk.
The doctrine does not depend on the landowner's knowl-
edge that the "individual" child is "incompetent".

The doctrine of negligent entrustment is not peculiar to
automobiles but rather an ordinary application of general
principles for determining whether a person's conduct was
reasonable in light of the apparent risk. It is grounded in
the general principle that a reasonable person will have in
mind the immaturity, inexperience and carelessness of
children. If, taking those traits into account, a reasonable
person would recognize that his conduct involves a risk of
creating an invasion of the child's or some other person's
interest, he is required to recognize that his conduct does
involve such a risk. "He should realize that the inexperi-
ence and immaturity of young children may lead them to
act innocently in a way which an adult would recognize as
culpably careless, and that older children are peculiarly
prone to conduct which they themselves recognize as
careless or even reckless."

\* \* \*

Entrusting potentially dangerous articles to a child may
pose an unreasonable risk of harm not only because the
child may not appreciate the risk or may not have the skill
to use the article safely but—even if he does appreciate the
risk and does have the requisite skill—because he may
recklessly ignore the risk and use the article frivolously due
to immaturity of judgment, exuberance of spirit, or sheer
bravado. [Citations omitted; emphasis added.]

The *Moning* Court, quoting 3 Cooley, Torts (4th ed),
§ 490, pp 433-434, noted that no one has the right to
demand of a child a prudence beyond his years or
capacity, and a degree of care is required commensurate
to the apparent immaturity that exposes the other to
peril. *Moning, supra* at 447-448. For example:

"[A] person driving rapidly along a highway where he sees boys engaged in sports, is not at liberty to assume that they will exercise the same discretion in keeping out of his way that would be exercised by others; and ordinary care demands of him that he shall take notice of their immaturity and govern his action accordingly." [*Id.* at 448, quoting Cooley, *supra* at 433-434.]

*Moning* reflects what is beyond reasonable dispute, which is that children generally do not always have the capacity or insight to appreciate and recognize dangers at a level comparable to adults. What may be an open and obvious danger to an adult is not necessarily open and obvious to a child.

In *Kosmalski v St John's Lutheran Church*, 261 Mich App 56; 680 NW2d 50 (2004), the minor plaintiff was injured by shattered glass when a younger child opened a glass door against the plaintiff's extended arm. This Court found that the question whether a glass door presented an unreasonable risk of harm depended, in part, on whether the licensee was an adult or a child. *Id.* at 67. The Court held that, "[b]ecause children could use this door to access the activity room and children are unlikely to appreciate the risk of harm that may result from the shattering of a nonsafety-glass door, . . . plaintiffs have established a genuine issue of material fact regarding whether the door at issue here involved an unreasonable risk of harm." *Id.* The *Kosmalski* Court, quoting 2 Restatement Torts, 2d, § 342, comment b, p 210, stated:

If the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risk involved in it. On the other hand, the possessor should realize that the fact that a dangerous condition is open to the perception of child licensees may not be enough to entitle him to assume that

they will appreciate the full extent of the risk involved therein. [*Kosmalski, supra* at 67.]

I also acknowledge, however, this Court's decision in *Stopczynski* which the plaintiff's decedent, a minor, died from injuries sustained when she dove into the defendant's swimming pool and struck her head on the bottom of the pool. This Court found, in part, that the open and obvious danger doctrine barred relief. The *Stopczynski* panel rejected the proposition that "a jury question is posed whether a particular minor could realize the full extent of the risks involved, even where the danger is open and obvious." *Id.* at 231. The Court quoted and adopted the dissent in *Pigeon v Radloff,* 215 Mich App 438, 447-448; 546 NW2d 655 (1996), given no precedential force or effect 451 Mich 885; 549 NW2d 574 (1996) (fifteen-year-old boy injured and rendered a quadriplegic as a result of diving into swimming pool), which provided:

> "I fail to see any reason to distinguish this case merely because plaintiff is a minor. In *Mallard* [*v Hoffinger Industries, Inc,* 210 Mich App 282, 285-286; 533 NW2d 1 (1995)], this Court explained why the open and obvious danger doctrine, in the context of a products liability case, applies to children as well as adults:
>
> " 'Because the determination of the obvious nature of the danger is an objective one that focuses on the typical pool user, and because it is not necessary that the user understand the precise nature of every possible injury that might result from diving into an above-ground pool, we are unable to distinguish this case from *Glittenberg* [*v Dough-boy Recreational Industries (On Rehearing),* 441 Mich 379; 491 NW2d 208 (1992)] on the basis of the victim's age. We tend to agree with defendant Pool Town's comment that, if a child is capable of understanding a warning, the dangerous condition would be obvious to the child, rendering the

warning unnecessary. Conversely, if the condition is not obvious to the child, then a warning would likely be of little use.'

"This reasoning is as applicable to premises liability cases as it is to products liability cases. That is, in either case, if the minor is sufficiently immature to appreciate the dangerous condition, he is also sufficiently immature to appreciate the warning." [*Stopczynski, supra* at 232.]

I cannot help but question some of the logic of *Stopczynski*. While, for example, a ten-year-old child may not have the acumen to be aware of a dangerous condition on his own, certainly that same ten-year-old child has the ability to understand and heed a statement or warning that makes the child aware of the danger. Nonetheless, *Stopczynski* does not direct a different result here. I agree that the open and obvious danger doctrine applies to children as well as adults as reflected in *Stopczynski*, and I would not hold to the contrary; the open and obvious danger doctrine applies equally to children. Further, the court should not look at the particular characteristics of the child at issue. Rather, in determining whether a danger is open and obvious, in the context of premises intended for use by child invitees, it must be evaluated and surmised from the position or perspective of a reasonably prudent child of like age. As the focus in *Stopczynski* was on the "typical pool user," which would include adults and children, the focus here is on the "typical ladder user," which necessarily requires one to concentrate on children or the typical child. I further note that *Stopczynski* involved a licensee, rather than an invitee, and a duty to an invitee goes beyond simply a duty to warn and includes a duty to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. *Lugo, supra* at 516. The Michigan Supreme Court in *Stitt v Holland*

*Abundant Life Fellowship,* 462 Mich 591, 596-597; 614 NW2d 88 (2000), reiterating the distinctions between classes of persons who enter upon the land or premises of another and the concomitant duties owed to those persons, stated:

> A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit. . . .

* * *

> The landowner has a duty of care [to an invitee], not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law. [Citations omitted.]

Accordingly, the *Stopczynski* discussion of children, warnings, and open and obvious dangers, and specifically the assertion that warning a child of a danger that is open and obvious only to an adult and not to children is rendered meaningless and unnecessary because the child will likewise not be able to appreciate the warning, can be read to be limited to licensee cases. Because the ladder in this case was specifically intended to be used by children, and because plaintiff was an invitee, I conclude that it is appropriate to utilize a "reasonably prudent child" standard in determining whether the dangers of falling from the ladder and the alleged lack of adequate straw were open and obvious.

As noted in *Moning,* cases involving trespassing children may give rise to the attractive nuisance doc-

trine, which is based on the principle that children generally have difficulty in recognizing the nature and extent of a risk or hazard. *Moning, supra* at 445. I see no reason not to similarly acknowledge and recognize that a child invitee faces the same hurdles in appreciating the open and obvious nature of a hazard. The Restatement of Torts provides that "[i]n any case where a possessor of land would be subject to liability to a child for physical harm caused by a condition on the land if the child were a trespasser, the possessor is subject to liability if the child is a licensee or an invitee." 2 Restatement Torts, 2d, § 343B. Comment b to that particular Restatement provides, in pertinent part:

> Where the child is not upon the land as a trespasser, but is a licensee or an invitee, the possessor of the land is no less obligated to anticipate and take into account his propensities to inquire into or to meddle with conditions which he finds on the land, his inattention, and his inability to understand or appreciate the danger, or to protect himself against it.

That a child should be held to a different standard when applying the open and obvious danger doctrine, where, as here, the premises are specifically intended for use by children, is further supported by the Michigan Model Civil Jury Instructions, which address comparable principles concerning children.

> A minor is not held to the same standard of conduct as an adult. When I use the words "ordinary care" with respect to [name of minor], I mean that degree of care which a reasonably careful minor of the age, mental capacity and experience of [name of minor] would use under the circumstances which you find existed in this case. It is for you to decide what a reasonably careful minor would do or would not do under such circumstances. [M Civ JI 10.06.]

> The law recognizes that children act upon childish instincts and impulses. If you find the defendant knew or should have known that a child or children were or were likely to be in the vicinity, then the defendant is required to exercise greater vigilance and this is a circumstance to be considered by you in determining whether reasonable care was used by the defendant. [M Civ JI 10.07.]

Further, this Court in *Stevens v Veenstra*, 226 Mich App 441, 443; 573 NW2d 341 (1997), acknowledged the general proposition that, in negligence actions, the capability of minors, seven years of age and older, is not determined on the basis of an adult standard of conduct, but rather on the basis of how a minor of similar age, mental capacity, and experience would conduct himself. "[T]here is no fixed age at which a child does and can be expected to realize any particular risk, as a matter of law." *Taylor v Mathews*, 40 Mich App 74, 92; 198 NW2d 843 (1972). "The reasonable expectation is for a child to be held to a lesser standard of foreseeability than an adult." *Fire Ins Exchange v Diehl*, 450 Mich 678, 688; 545 NW2d 602 (1996), overruled in part on other grounds *Wilkie v Auto-Owners Ins Co*, 469 Mich 41; 664 NW2d 776 (2003).

Other jurisdictions have directly addressed the issue concerning child invitees and the open and obvious danger doctrine. The Alabama Supreme Court in *Collier v Necaise*, 522 So 2d 275, 278-279 (Ala, 1988), observed:

> [A]n invitor is not liable for injuries to an invitee resulting from a dangerous condition that is known to the invitee, or resulting from one that the invitee should have recognized in the exercise of reasonable care. "The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable."

There is no reason why these same standards cannot apply to cases in which the invitee is a child. Nevertheless, an invitee's peculiar status as a child may alter the degree of "reasonable care and diligence" required on the part of the occupier of land. . . .

Surely, one may postulate many cases in which a child invitee might not be able to appreciate the perils presented by a dangerous condition that would appear "open and obvious" to an adult. The child's ignorance of the danger in such a case would trigger the duty to warn on the part of the occupier of the land, even though there might be no duty to warn an adult in the same position. Each of these cases must be examined individually, taking into account the child's age, experience, and maturity in determining whether the child invitee is "ignorant" of the danger so that the duty to warn remains extant. [Citations omitted.]

In *Johnson v Pettigrew*, 595 NE2d 747, 751 (Ind App, 1992), the Indiana Court of Appeals, citing 2 Restatement Torts, 2d, § 343 and § 343A, which address invitees and the open and obvious danger doctrine, concluded that child invitees are subject to the open and obvious danger doctrine, but it is necessary to take "into account the abilities, age, experience, and maturity of the child invitee."

My analysis does not end, however, because it is necessary to review the latest Michigan Supreme Court cases that have addressed the open and obvious danger doctrine, *Lugo* and *Mann*, in order to determine if they contain any pronouncements and principles that would bar my conclusions.

In *Mann, supra* at 328-329, the Michigan Supreme Court, citing *Lugo*, noted:

To determine whether a condition is "open and obvious," or whether there are "special aspects" that render even an "open and obvious" condition "unreasonably dangerous," the fact-finder must utilize an objective standard,

i.e., a reasonably prudent person standard. That is, in a premises liability action, the fact-finder must consider the "condition of the premises," not the condition of the plaintiff. A visibly intoxicated person is held to the same standard of reasonable conduct as a sober person. [Citations omitted.]

The Court also stated that "[i]n making a determination about whether an alleged dangerous condition is 'open and obvious,' such a determination is not dependent on the characteristics of a particular plaintiff, but rather on the characteristics of a reasonably prudent person." *Mann, supra* at 329 n 10 (citations omitted). "[I]mposing an obligation upon a homeowner or other premises possessor, not merely to make his premises reasonably safe under ordinary circumstances, but also every conceivable circumstance, . . .would impose a substantially increased legal burden upon such persons." *Id.*

At first glance, the Supreme Court's language suggests that whether the particular injured party is a child has no bearing on the determination regarding whether the danger was open and obvious. But, in my opinion, *Lugo* and *Mann* cannot be read in that vein. They prohibit taking into consideration particular, individualized characteristics of a plaintiff, but not extensively broad and general classes or categories of persons, e.g., children, where the premises are designed and aimed toward use by children and where the ability to recognize a danger is affected by well-accepted distinctions between children and adults.[2] The distinction between children and adults has long been relevant under Michigan tort law. It is clear that our Supreme Court's concern in *Mann* was to preclude a possessor of land from having to take into consideration, in the context of

---

[2] I limit my analysis to children and adults.

deciding whether to warn of or remove dangers or hazards, all individuals who enter the premises and every conceivable physical or mental characteristic attributed to those individuals. That concern is not implicated here. The legal burden is not substantially increased on premises possessors and invitors who open their doors specifically to children by a ruling that merely requires that open and obvious dangers be measured through the eyes of a reasonably prudent child. I am reasonably confident in my conclusion that the Supreme Court did not intend that children recognize and appreciate open and obvious dangers consistently with the ability of adults to so recognize in settings where the premises owner or possessor invites children to use the premises. The *Lugo* and *Mann* Courts did not overrule existing and long-established precedent regarding children and premises liability. The open and obvious danger doctrine must be based on an objective standard, which, under the circumstances here, is whether a reasonably prudent child would have recognized the danger. Because differences in ages among children play a significant role in the level of understanding and ability to recognize a hazard or danger, as opposed to differences in ages with respect to adults, this must also be considered by the trier of fact, as long as the property owner intended that children of a certain age range use the premises. See *Stevens, supra* at 443; M Civ JI 10.06.

Should the jury conclude that any danger was not open and obvious, it would be unnecessary to address whether a special aspect existed that would remove the case from the open and obvious danger doctrine. However, if the jury concludes that any danger was open and obvious, a question would arise concerning special aspects. For purposes of clarity, I note that my discussion above regarding children relates solely to the matter of

determining whether a danger is open and obvious and not whether a special aspect exists. Our Supreme Court in *Lugo, supra* at 518, providing examples of "special aspects," stated as follows:

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable. Similarly, an open and obvious condition might be unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm. To use another example, consider an unguarded thirty foot deep pit in the middle of a parking lot. The condition might well be open and obvious, and one would likely be capable of avoiding the danger. Nevertheless, this situation would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken.

Only those special aspects that create a uniquely high likelihood of harm or severity of harm if the risk or hazard is not avoided will serve to remove that condition from the open and obvious danger doctrine. *Id.* at 519.

Here, assuming an open and obvious danger existed of which a child should be cognizant, the danger was not effectively unavoidable, nor was there a substantial risk of death or severe injury. There is no indication in *Lugo* that the examples or illustrations of special aspects provided in the opinion reflect the only situations where special aspects can arise. I believe that a special aspect of the condition at issue could be the fact that the ladder and surrounding area were designed for use by children. In other words, even if children of like age would

recognize and discover the open and obvious danger of using the ladder without adequate straw to safely cushion a fall, arguably there would nonetheless be a high likelihood of harm because the ladder could be deemed so enticing to children that they would ignore the known danger or because they may not have a basic level of appreciation regarding the injuries that could be incurred on falling. I will discuss this issue further below.

### C. APPLICATION OF LAW TO FACTS AT SUMMARY DISPOSITION STAGE

I commence my discussion by identifying the alleged circumstances or dangers that may have been open and obvious. First, there is the act or danger of falling from the ladder. Second, there is the circumstance or danger of inadequate straw on the ground to safely break a fall. These two matters are interrelated in that, falling from the ladder is not dangerous if there is adequate straw placed on the ground and inadequate straw is not, in itself, dangerous unless the straw is used to cushion falls from the ladder. This is reflected in the evidence that most users of the ladder fall, but yet there had been no previous injuries because the straw cushioned the fall. Defendant Eugene Symanzik testified:

*Q.* Why do you keep piles of straw under the ladder?

*A.* So when people fall, if they fall off, they got a soft landing and not be on the hard ground.

*Q.* So you recognized certainly that there was a potential—the ladder was for children, right?

*A.* Yes.

\* \* \*

*Q.* So you put straw underneath the ladder because you were aware of the fact that someone might fall off the ladder, correct?

*A.* Yes.

\* \* \*

*Q.* So you keep at least two feet of straw under the ladder for safety in case somebody falls down?

*A.* Yes.

*Q.* Would you agree with me that if there was no straw under the ladder that would be a dangerous situation or could be a dangerous situation?

*A.* Yes, I agree.

Defendant Carolyn Symanzik testified:

*Q.* What do you check it [ladder] for?

*A.* The straw underneath.

*Q.* Why do you check it very often?

*A.* Because it needs to be checked. It's something that—the kids love that Jacobs ladder and I want to make sure that they're safe.

*Q.* But why does it need to be checked?

*A.* Because when they fall they move the straw around.

*Q.* So does it need to be checked regularly?

*A.* We try to check it about every hour.

Merely recognizing the openness and obviousness of falling from the ladder was not sufficient to afford defendants protection. Inadequate straw to cushion the fall also had to be open and obvious. Accordingly, it must be determined if factual issues exist with respect to whether plaintiff actually knew that he could fall from the ladder and knew that there was inadequate straw, or whether it was open and obvious to a reasonably prudent child of like age that one could fall from the ladder and that there was, as claimed, inadequate straw.

Plaintiff testified in his deposition that, before using the ladder, he saw that it swayed from side to side, but he had not seen anyone fall from the ladder. However, he further testified:

*Q.* So he [plaintiff's friend who first used the ladder] swung to the left and also swung to the right going up?

*A.* Yeah, but not like back and forth. He was trying to hang on.

*Q.* It was a little bit of a challenge to hang on, correct?

*A.* Yes.

*Q.* Could you see that somebody might fall off if they weren't careful using that ladder?

*A.* Yes.

*Q.* So you knew you had to be careful climbing up that ladder when you got your chance, right?

*A.* Yes.

*Q.* And you say that Russ jumped off the ladder halfway down, correct?

*A.* Yeah. Just about three or four feet.

In view of the testimony, I would find, as a matter of law, that plaintiff knew that he could fall from the ladder. Plaintiff clearly knew it was difficult to hang on to the ladder. Moreover, reasonable minds could agree that it would be open and obvious to a reasonably prudent child of like age that he could fall off the swaying ladder. I find that, as a matter of law, the act of falling off the ladder, if one chose to climb it, was open and obvious. I thus turn my attention to the issue of the straw.

Plaintiff testified that there was very little straw on the ground when he fell.[3] He first indicated that you

---

[3] Robert Bragan, who accompanied plaintiff to defendants' farm on the day of the accident, testified that plaintiff and his friend Russ went and

could see part of the ground but then stated that there was "[j]ust enough to cover the floor." Plaintiff further testified in regard to the straw:

*Q.* And you saw that [straw] before you got on the ladder?

*A.* No.

*Q.* Let me ask it differently. Did you notice that there was very little hay on the ground before you got on the ladder?

*A.* No, because I didn't think I was gonna fall. I didn't think I was gonna fall to land on something safe.

*Q.* Let's back up.

*A.* Okay.

*Q.* You don't remember whether or not there was a line of kids, is that what you told us?

*A.* Yes.

*Q.* When Russ got on the ladder did you at any point in time look underneath the ladder on the ground?

*A.* I don't know.

*Q.* Before you got on the ladder yourself did you ever look at the ground to see if there was any hay underneath the ladder?

*A.* I don't know.

*Q.* At what point in time if ever did you look at the ground underneath the ladder?

*A.* I don't know.

---

used the ladder without parental supervision. Only after the fall did Bragan go to the area of the ladder. Also, there is no indication that defendants required parental supervision when children used the ladder. Therefore, there is no need to determine whether the alleged lack of adequate straw was open and obvious to plaintiff's parents, and there is no need to determine the effect on a child's cause of action of a parent's recognition of an open and obvious danger where the parent possibly had the ability to alter the child's actions to the point of avoiding the danger.

The evidence did not show that plaintiff was actually aware of a lack of adequate straw to safely cushion the fall. I also conclude that an issue for the jury exists with respect to whether the lack of sufficient straw would have been open and obvious to a reasonably prudent child of like age. For an adult, let alone a child, it might be difficult to assess how much straw is necessary to safely break a fall from the ladder even if the straw were observed before climbing the ladder. Additionally, it is arguable that a reasonably prudent child would not have recognized or observed the danger generated by too little straw underneath the ladder. Reasonable minds could differ on the subject. In *Glittenberg v Doughboy Recreational Industries (On Rehearing)*, 441 Mich 379, 398-399; 491 NW2d 208 (1992), the Michigan Supreme Court stated:

> In summary, when a defendant claims that it owes no duty to warn because of the obvious nature of a danger, a court is required, as a threshold matter, to decide that issue. The court must determine whether reasonable minds could differ with respect to whether the danger is open and obvious. If reasonable minds cannot differ on the "obvious" character of the product-connected danger, the court determines the question as a matter of law. If, on the other hand, the court determines that reasonable minds could differ, the obviousness of risk must be determined by the jury. [Citations omitted.]

Here, the jury should determine whether the lack of adequate straw would be open and obvious to a reasonably prudent child of like age.

In regard to the issue of special aspects, reasonable minds could also differ on whether there would be a high likelihood of harm, regardless of whether any danger was open and obvious, because the Jacob's Ladder, designed for children, might be so enticing to children that they would ignore the known open and

obvious danger or because they may not have a basic level of appreciation regarding the injuries that could be incurred on falling. Should it be determined that any danger was open and obvious, the jury would still be required to determine whether even the open and obvious risk was unreasonably dangerous under the circumstances presented.

### III. CONCLUSION

I conclude that the appropriate test in applying the open and obvious danger doctrine, in situations involving child invitees and involving premises specifically intended for use by child invitees, is whether the child was actually aware of the open and obvious danger or whether the danger was so open and obvious that a reasonably prudent child invitee of like age might reasonably be expected to discover the danger. Applying this standard to the documentary evidence presented and in the context of a motion for summary disposition, I would find, as a matter of law, that plaintiff knew that he could fall from the ladder. Moreover, it would be open and obvious to a reasonably prudent child of like age that one could fall off the swaying ladder. The act of falling off the ladder, if one chose to climb it, was open and obvious. The evidence, however, did not show that plaintiff was actually aware of a lack of adequate straw necessary to safely cushion the fall. Furthermore, an issue for the jury exists with respect to whether the lack of sufficient straw would have been open and obvious to a reasonably prudent child of like age. Finally, as outlined above, a jury issue exists in regard to special aspects if indeed the issue need be addressed.

I concur in the reversal and remand.