*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AK, a Minor, by Next Friend KRISTINE
KURZATKOWSKI,

        Plaintiff-Appellant,

v

BENEDICT TALAN, TRUDY TALAN, COSTCO
WHOLESALE CORPORATION, BACKYARD
PLAY SYSTEMS, LLC, and WA HOME
IMPROVEMENT, INC.,

        Defendants-Appellees.

UNPUBLISHED
September 14, 2023

No. 361158
Oakland Circuit Court
LC No. 2020-180619-NO

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendants' motions for summary disposition under MCR 2.116(C)(8) (failure to state a claim for relief) and (10) (failure to establish a genuine issue of material fact). We affirm.

## I. FACTS AND PROCEEDINGS

On June 9, 2019, eight-year-old AK was injured when she fell from a backyard playset while at a birthday party at the home of defendants Benedict and Trudy Talan (collectively the Talan defendants). The involved playset was the Ultra Playset, Model 4098, manufactured by defendant Backyard Play Systems, LLC (Backyard). The Talan defendants purchased the playset from defendant Costco Wholesale Corporation (Costco) in 2013, and placed it on their backyard lawn. The playset was available for sale on Costco's website, but not sold in Costco's stores. Backyard contracted with defendant WA Home Improvement, Inc. (WA) for delivery, assembly, and installation of the playset. WA's employee, Weislaw Synowiec, assembled the playset for the Talan defendants. Backyard's user's manual states that grass is not a safe surface for the playset and recommended placing a layer of cushioning material, such as wood chips, under the playset.

The Talan defendants held a birthday party for their daughter in June 2019. AK and her mother, plaintiff, were guests at the party. The Talan defendants allowed the child guests to use

the playset and a hot tub. While playing on the playset, AK slid down one of the slides and slipped on a wet spot on the slide, which caused her to fall over the side, onto the grass. She fractured her thoracic vertebra. AK received medical treatment and was able to resume her regular activities by September 2019.

Plaintiff brought this action against defendants, asserting claims for nuisance, breach of contract, and negligence against WA, negligence and nuisance against Costco and Backyard, and premises liability, nuisance, negligence, and gross negligence against the Talan defendants. All defendants moved for summary disposition and the trial court granted their motions. Plaintiff now appeals.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Eplee v City of Lansing*, 327 Mich App 635, 644; 935 NW2d 104 (2019). Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2018) (emphasis in original). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id.* at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

Summary disposition may be granted under MCR 2.116(C)(10) "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "If the moving party properly supports his or her motion, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists." *Redmond v Heller*, 332 Mich App 415, 438; 957 NW2d 357 (2020). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Lowrey*, 500 Mich at 7, quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 363; 547 NW2d 314 (1996).

## III. CLAIMS AGAINST WA

### A. BREACH OF CONTRACT

Plaintiff argues that the trial court erred by dismissing her breach-of-contract claim against WA, which was predicated on her claim that WA breached its contract with Barnyard by installing the playset without laying cushioning material under it. Plaintiff asserts that she is entitled to enforce that contract because AK is an intended third-party beneficiary of the contract. We disagree.

"In Michigan, a person who is a nonparty to a contract may be entitled to sue to enforce the contract as a third-party beneficiary." *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 674; 939 NW2d 738 (2019). In *Farm Bureau*, this Court cited MCL 600.1405, which provides, in pertinent part:

Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

Thus, a person is a third-party beneficiary of a contract only if the contract establishes that a promisor has undertaken a promise directly to or for the benefit of that person. *Farm Bureau*, 328 Mich App at 674. "A third-party beneficiary of a contract may enforce a contract against the promisor because the third-party beneficiary 'stands in the shoes' of the promisee." *Id*. at 674-675. "To create a third-party beneficiary, a contract must expressly contain a promise to act to benefit the third party." *Id.* (cleaned up). Courts use "an objective standard to determine from the language of the contract itself whether the promisor undertook to give or to do, or to refrain from doing, something directly to or for the person asserting status as a third-party beneficiary." *Id*. A court does "not focus on the subjective intent of the contracting parties but . . . on the intent of the contracting parties as determined solely from the form and meaning of the contract." *Id*.

In *Koenig v City of South Haven*, 460 Mich 667; 597 NW2d 99 (1999), a large wave swept the plaintiff's decedent off a pier extending into Lake Michigan. The decedent sustained permanent injuries and died five years later. *Id*. at 670. The piers were owned and erected by the Detroit District Army Corps of Engineers. An agreement between the defendant city and the Corps of Engineers delegated to the city responsibility for controlling access to the piers during inclement weather. *Id*. at 671. The plaintiff brought suit against individual governmental employees for gross negligence. The plaintiff's theory of relief against the city was that the decedent was a third-party beneficiary of the contract between the city and the Corps of Engineers. *Id*. at 672. The trial court granted summary disposition for the defendant city. *Id*. On appeal, this Court held that the trial court erred by holding that the decedent was not a third-party beneficiary to the contract and granting summary disposition for the city on that basis. *Koenig v City of South Haven*, 221 Mich App 711; 562 NW2d 509 (1997). Our Supreme Court disagreed and held that the plaintiff's decedent did not qualify as a third-party beneficiary of the contract between the defendant city and the Corps of Engineers. The Court stated that "only intended third-party beneficiaries, not incidental beneficiaries, may enforce a contract under § 1405." *Koenig*, 460 Mich at 680. The Court explained:

[A] third-party beneficiary may be a member of a class, but the class must be sufficiently described. This follows ineluctably from subsection 1405(1)'s requirement that an obligation be undertaken *directly* for a person to confer third-party beneficiary status. As can be seen then, this of course means that the class must be something less than the entire universe, e.g., "the public"; otherwise, subsection 1405(2)(b) would rob subsection 1405(1) of any narrowing effect. [*Koenig*, 460 Mich at 680.]

The Court observed that the agreement between the defendant city and the Corps of Engineers did not state that the parties undertook obligations "for the benefit of a putative third-party beneficiary." *Id*. Instead, the contract allocated responsibilities between the parties with respect

to restricting access to the piers during hazardous conditions. *Id*. The Court explained that the contract "only references the public generally and includes no provision by which South Haven undertook to do anything directly for a *designated* class of persons that included plaintiffs' daughter." *Id*. at 682. The Court rejected the argument that the contract implied a class of persons who might be injured by the city's responsibilities under the contract, remarking that "[t]his reasoning would . . . mean that virtually every contract could be viewed as impliedly creating a class of third-party beneficiaries because the inquiry would proceed backward from an injury to create a class." *Id*. at 683.

In *Brunsell v City of Zeeland*, 467 Mich 293; 651 NW2d 388 (2002), the plaintiff alleged that she tripped and fell because of a defect in a sidewalk that the defendant city leased to a bank. The lease agreement between the defendant and the bank required the city to maintain and repair the sidewalk "as may be necessary for the public safety." *Id*. at 294-295. The plaintiff alleged that she was an intended third-party beneficiary of the lease agreement. *Id*. at 295. Applying the principles stated in the lead opinion in *Koenig*, the Court concluded that the plaintiff "can only plausibly claim third-party beneficiary status under the lease agreement as a member of the public because her claim is premised on contractual language referring to the city repairing improvements 'as may be necessary for the public safety.' " *Id*. at 298. The Court found that the lease agreement defined the parties' maintenance obligations with each other, rather than defining their obligations "for the purpose of directly benefitting third parties." *Id*. at 298-299. Accordingly, the plaintiff "was not an intended third-party beneficiary of the lease agreement because an objective analysis reflects that the city's promise to the bank that the city would be responsible for repairs was not intended to directly benefit third parties." *Id.* at 299.

Plaintiff argues that this case is distinguishable because the language in the agreement between Backyard and WA restricts the potential class of beneficiaries to children between the ages of 3 and 11. Therefore, plaintiff argues, AK was not an incidental beneficiary, but rather a member of the class of children who would use the playset, thereby qualifying as an intended beneficiary. Although plaintiff generally cites page two of the agreement between Backyard and WA, she does not specify the provision that allegedly memorializes a commitment to protect children who will use the playset and establishes that AK is an intended beneficiary of the contract. Plaintiff "may not leave it to this Court to search for a factual basis to sustain or reject [her] position." *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 424; 576 NW2d 667 (1998). We have reviewed the contract and were unable to find any provision indicating such a commitment. Notably, however, Paragraph 9.2 states that "[t]his Agreement shall be binding upon and shall insure [sic] to the benefit of the parties, their permitted successors and assignees." Because plaintiff does not identify, and we have not found, any language suggesting that AK, or any other third party for that matter, was an intended beneficiary of the contract, plaintiff has not established that she is entitled to enforce the contract under a third-party beneficiary theory.

Plaintiff also states that WA "included pamphlets in its playset boxes, stating, 'children's safety is our number one priority,' " indicating that WA "intended for young children to use and enjoy these playsets." However, WA was the installer, not the seller or manufacturer of the playsets. Plaintiff has not identified any evidence that WA inserted pamphlets into the boxes sold by Backyard via Costco.

In sum, plaintiff fails to establish that the installation agreement between Backyard and WA included any provision incorporating children who would play on the playset as intended third-party beneficiaries to the agreement. Moreover, even accepting that WA would have known that the playsets would be used by children, there is no material distinction between the class of child users of the playsets and the class of members of the public who would use the piers in *Koenig*, or the class of pedestrians who would use the sidewalk in *Brunsell*. Even if the class of children is limited to the Talan defendants' children and their guests, the salient fact in *Koenig* and *Brunsell* was not the size or breadth of the putative class of third-party beneficiaries, but the terms of the contract. Plaintiff is unable to identify any contractual language indicating that the contracting parties intended for child users of the equipment to be beneficiaries of the agreement. Accordingly, the trial court properly granted WA's motion for summary disposition with respect to plaintiff's breach-of-contract claim.

## B. NUISANCE

Plaintiff also argues that the trial court erred by dismissing her nuisance claim against WA. Again, we disagree.

"A nuisance per se is an act, occupation or structure which is a nuisance at all times and under all circumstances." *Ford v City of Detroit*, 91 Mich App 333, 335; 283 NW2d 739 (1979). "A nuisance in fact, by contrast, is an act, occupation or structure which becomes a nuisance because of circumstances and surroundings. Whether or not a particular thing is a nuisance in fact is to be resolved by the trier of fact." *Id*. at 335-336.

"Historically, Michigan has recognized two distinct versions of nuisance, public nuisance and private nuisance." *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992). "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Id*., citing 4 Restatement Torts, 2d, § 821D, p 100. Our Supreme Court in *Adkins* recognized the difficulty of articulating "an encompassing definition" of nuisance given the variety of types of harm that can constitute nuisance. Consequently, "[i]mprecision in defining nuisance leads to confusion regarding the interest it is designed to protect." *Id*. at 303. "There are countless ways to interfere with the use and enjoyment of land including interference with the physical condition of the land itself, disturbance in the comfort or conveniences of the occupant including his peace of mind, and threat of future injury that is a present menace and interference with enjoyment." *Id*. "The essence of private nuisance is the protection of a property owner's or occupier's reasonable comfort in occupation of the land in question." *Id*. In *Adkins*, the Court concluded that contamination of ground water on property in proximity to the plaintiffs' property could not "form the basis for recovery because negative publicity resulting in unfounded fear about dangers in the vicinity of the property does not constitute a significant interference with the use and enjoyment of land." *Id*. at 306. In this case, plaintiff argues that the playset was not safe because it did not have appropriate cushioning material. But this theory does not involve any invasion or interference with the use and enjoyment of another's land and thus plaintiff cannot establish a claim for private nuisance.

"A public nuisance is an unreasonable interference with a common right enjoyed by the general public." *Yopek v Brighton Airport Assoc, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359065); slip op at 4 (cleaned up). " 'Unreasonable interference' includes

-5-

conduct that (1) significantly interfered with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights." *Id.*, ___ Mich App at ___; slip op at 4 (cleaned up). Public nuisance does not require that the entire community be affected, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right. *Garfield Twp v Young*, 348 Mich 337, 341-342; 82 NW2d 876 (1957). A property owner has no right to use its property to create a public nuisance. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 272; 761 NW2d 761 (2008).

In the instant case, the basis for plaintiff's nuisance claim is that a playset over grass without cushioning material poses a risk of harm to members of the public who use it. Plaintiff acknowledges that a playset on residential property without cushioning material is not illegal, but she argues that disregard of the recommendations of the Consumer Product Safety Commission (CPSC) and ASTM International, a standards organization, created a risk of bodily harm sufficient to constitute an actionable public nuisance.[1] However, plaintiff cannot demonstrate that the residential playset posed an unreasonable risk of harm to members of the public, or that AK was using the playset in the exercise of a public right when she was injured. AK was a social guest at the Talan defendants' home. Thus, plaintiff's allegations do not support a valid claim of public nuisance either.

## C. NEGLIGENCE

Plaintiff further argues that the trial court erred by dismissing her negligence claim against WA. We disagree.

To prove negligence against WA, plaintiff was required to prove four elements: (1) a duty owed by WA to AK; (2) a breach of that duty; (3) causation; and (4) damages. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). "A claim based on the condition of the premises is a premises liability claim." *Finazzo v Fire Equip Co*, 323 Mich App 620, 626; 918 NW2d 200 (2018). If a plaintiff's injury "arose from an allegedly dangerous condition on the land," the plaintiff's claim "sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Id.* (quotation marks and citation omitted). For a party to be subject to premises liability, that party must possess and control the property at issue but not necessarily be its owner." *Id.* at 627.

---

[1] The CPSC and ASTM have issued standards for playground safety, which includes the use of cushioning material under play structures. Michigan's Playground Equipment Safety Act, MCL 408.681 *et seq.*, requires manufacturers or assemblers of public playground equipment to comply with "[t]he 'handbook for public playground safety' published for the U.S. consumer products safety commission" and "[t]he 'standard consumer safety performance specification for playground equipment for public use, ASTM F1487-01', published by the American society for testing and materials," MCL 408.684. But there is no requirement for homeowners to comply with these standards for playsets on residential property.

In *Finazzo*, the defendants were contractors installing a fire suppression system in the building where the plaintiff was employed as a security guard. The plaintiff was injured when he tripped on electrical cables lying on the floor where the installation was taking place. *Id*. at 622-623. This Court concluded that the defendant's claim sounded in premises liability because his injury arose from an allegedly dangerous condition of the property. *Id*. at 626. However, upon examining the common-law principles regarding a defendant's control and possession of property for purposes of imposing premises liability, this Court concluded that the defendants, "as contractors performing changes to the property by methods that were under defendants' control, were also best able to prevent any harm to others." *Id*. at 629-630. This Court cited 2 Restatement of Torts, 2d, § 384, which states:

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge. [*Finazzo*, 323 Mich App at 629.]

The Court also cited comment c, p 289, which states that "[t]he rule stated in this Section applies to anyone who erects a structure upon land or alters its physical condition on behalf of its possessor, irrespective of whether he does so as a servant of the possessor or as a paid or unpaid independent contractor." *Finazzo*, 323 Mich App at 629. This Court concluded that the defendants "as contractors performing changes to the property by methods that were under defendants' control, were also best able to prevent any harm to others." *Id*. at 629-630 (cleaned up).

In this case, plaintiff's claim involves an allegedly dangerous condition on the Talan defendants' property, namely a play structure over grass instead of cushioning material. Therefore, her claim sounds in premises liability, not negligence. Furthermore, WA was not in control or possession of the premises such that it could be liable under a premises liability theory. Although WA may have had temporary control of the property while it was installing the playset, there is no question of fact that it did not have control of the property when AK was injured six years later. Accordingly, the trial court did not err by dismissing plaintiff's claim for negligence or premises liability against WA.

## IV. CLAIMS AGAINST COSTCO AND BACKYARD

### A. NUISANCE

Plaintiff argues that Costco's and Backyard's marketing of the playset created a nuisance. Plaintiff argues that Costco is responsible for the alleged nuisance because it advertised the playset by omitting the ASTM and CPSC recommendations from its website. Additionally, Backyard is responsible because it sent untrained workers to install the playset. Plaintiff emphasizes that the absence of protective cushioning created the actionable condition on the Talan defendants' property that supports a nuisance claim against Costco and Backyard. The analysis of plaintiff's public nuisance in fact claim against WA applies equally to Costco and Backyard. Regardless of the nature and severity of the alleged condition, plaintiff cannot establish a private nuisance unless the condition invaded AK's private property interest, and plaintiff's theory does not involve any

invasion or interference with the use and enjoyment of any private property interest of AK. Further, she cannot establish a public nuisance because the playset was not available to the general public and AK used the playset as a social guest at a private party, not in the exercise of a public right. Therefore, the trial court properly dismissed the nuisance claims against Costco and Backyard.

## B. NEGLIGENCE (COSTCO)

Because AK's injury arose from an allegedly dangerous condition of the land, i.e., the absence of cushioning material, the claim is one for premises liability, not negligence. Further, because Costco was not in possession or control of the land, it cannot be liable under a premises liability theory. Therefore, the trial court properly dismissed this claim against Costco.

## V. THE TALAN DEFENDANTS

## A. PREMISES LIABILITY

Plaintiff argues that the there is a material question of fact whether the Talan defendants breached the duty of care owed to AK. We disagree.

In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was a proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages. *Tripp v Baker*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360960); slip op at 3. In analyzing a premises liability claim, the nature of a defendant landowner's duty depends on whether the injured party was on the premises as a trespasser, licensee, or invitee. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). In this case, it is undisputed that AK was a licensee because she was a social guest on the Talan defendants' property at the time of her injury.[2]

"A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Stitt*, 462 Mich at 596. "Typically, social guests are licensees who assume the ordinary risks associated with their visit." *Id.* In *Taylor v Laban*, 241 Mich App 449, 454-455; 616 NW2d 229 (2000), this Court quoted 2 Restatement Torts, 2d, § 342, p 210 for the "best expressed" duty owed by a landowner to a licensee:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

---

[2] A licensee is a person who is privileged to enter the land of another by virtue of the possessor's consent. *Kelsey v Lint*, 322 Mich App 364, 371; 912 NW2d 862 (2017).

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

See also *Sanders v Perfecting Church*, 303 Mich App 1, 4-5; 840 NW2d 401 (2013) ("A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved."). "In contrast to an invitee, a licensee is on the premises of another because of some personal unshared benefit and is merely tolerated on the premises by the owner." *Taylor*, 241 Mich App at 454 (cleaned up). "Consequently, a licensee is entitled to expect only that he will be placed upon an equal footing with the possessor himself by an adequate disclosure of any dangerous conditions that are known to the possessor." *Id*. (cleaned up).

"[P]roperty owners generally owes no duty to supervise minor children of guests on their property." *Ji Liang by Shaw v Guang Hui Liang*, 328 Mich App 302, 311; 936 NW2d 710 (2019) (cleaned up). "However, this rule applies only to claims of ordinary negligence." *Id*. "In the context of premises liability, the law imposes on landowners the duty to take reasonable or ordinary care to prevent injury to child licensees from dangerous conditions on the land." *Id*. (cleaned up).

Traditionally, a possessor of land had no general obligation to take any steps to safeguard licensees from conditions that are open and obvious. *Nathan v David Leader Mgt, Inc*, ___ Mich App ___, ___; ____ NW2d ___ (2022) (Docket No. 357420); slip op at 4; *Pippin v Atallah*, 245 Mich App 136, 143; 626 NW2d 911 (2001). A danger is considered to be open and obvious if an average user with ordinary intelligence would be able to discovery the danger and the risk presented upon casual inspection. *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012). Recently, in *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket Nos. 162907 and 163430); slip op at 2, our Supreme Court overruled *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001) and concluded that *Lugo* erroneously incorporated the open and obvious danger doctrine into the duty analysis, contrary to "Michigan's commitment to comparative fault." *Id*. at ___; slip op at 36, 40-49. The Court observed that courts' attempts to apply *Lugo* "generated a whole host of practical-workability problems." *Id*. at ___; slip op at 39. The Court summarized its legal conclusions as follows:

To summarize, a land possessor owes a "duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Williams* [*v Cunningham Drug Stores, Inc*], 429 Mich [495, 499; 418 NW2d 381 (1988)]. If the plaintiff establishes that the land possessor owed plaintiff a duty, the next step in the inquiry is whether there was a breach of that duty. . . . As part of the breach inquiry, the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee. If

breach is shown, as well as causation and harm, then the jury should consider the plaintiff's comparative fault and reduce the plaintiff's damages accordingly. A determination of the plaintiff's comparative fault may also require consideration of the open and obvious nature of the hazard and the plaintiff's choice to confront it. [*Kandil-Elsayed*, ___ Mich at ___; slip op at 43-44.]

*Kandil-Elsayed* did not alter the categories of licensee, invitee, and trespasser. *Id*. at ___; slip op at 39.

The Talan defendants owed AK, a licensee, a duty "to warn . . . of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved." *Sanders v Perfecting Church*, 303 Mich App at 4-5. Thus, it is necessary to determine whether the location of the playset on grass was a dangerous condition that created an unreasonable risk of harm, thereby triggering a duty to warn. In *Prebenda v Tartaglia*, 245 Mich App 168, 170; 627 NW2d 610 (2001), the allegedly dangerous condition was a windowless door in the common hallway of an apartment complex. The plaintiff's decedent was injured when she tried to pull the door open from one side while another resident was pushing it open from the other side. *Id*. at 169. The plaintiff argued that the door was "dangerously faulty" because it lacked a window through which users could see if anyone was on the other side. This Court concluded that the door was not a dangerous condition, but "a commonplace and ordinary door." This Court held "that no reasonable juror could accept that argument in light of the fact that most doors simply do not have such windows." Because this Court concluded that the door was not a dangerous condition in the first place, it was not necessary to consider whether the condition was open and obvious. *Id*. at 169-170.

In *Bragan v Symanzik*, 263 Mich App 324; 687 NW2d 881 (2004), the defendant operated a commercial Fun Barn with a Jacob's Ladder attraction for paying visitors. "The object of the Jacob's Ladder is to climb to the top and ring a bell, but 90% of climbers fall." *Id*. at 326. The 11-year-old plaintiff tried to climb the ladder, but fell to the floor and fractured both wrists. The defendant planned to keep a two-foot layer of straw under the ladder to protect climbers who fell, but at the time of the plaintiff's fall "there was barely enough straw to cover the ground under the ladder." *Id*. at 326-327. Addressing whether the condition was an open and obvious hazard, this Court noted that the plaintiff testified that he knew that he could fall and that he could have noticed the lack of sufficient straw. However, this Court further stated that "[i]t does not necessarily follow that plaintiff, or other child invitees, would have appreciated the risk of injury from falling into the scant amount of straw underneath a ten-foot high rope ladder." Accordingly, this Court concluded that the facts established a jury-triable question of fact regarding whether the hazard of falling from the ladder onto an unprotected floor was open and obvious to the child plaintiff. *Id*. at 335-336. Therefore, the defendant was not entitled to summary disposition. *Id*. at 336.

In the instant case, plaintiff failed to establish the presence of an unreasonably dangerous condition in the first instance. *Prebenda*, 245 Mich App at 170. Reasonable jurors could not find that the backyard playset, mounted on a grassy surface, was an unreasonably dangerous condition. Like windowless doors in common areas, residential play structures set on grass are common. The playset was a common play structure with swings, two slides, and ladders. It was designed for young children, and it did not pose the sort of risks inherent in the Jacob's ladder, which had a 90-percent fall rate. Although plaintiff faults the Talan defendants for not mounting the play structure

on a cushioning material, the inquiry is not whether there are other more optimal surfaces on which such a play structure can be mounted, but whether mounting the structure on a grassy surface rendered the structure unreasonably dangerous. Children routinely play on such structures in residential grass yards without injury. In fact, there is no evidence that a child sustained an injury in the six years between its installation and AK's fall. Plaintiff emphasizes that the playset was seven feet high at its highest point, but AK did not fall from the highest point. The occurrence of AK's unusual fall does not prove that the structure was unreasonably dangerous.

Under *Kandil-Elsayed*, whether a hazard is open and obvious is relevant to assessing the parties' comparative negligence. But because there is no genuine issue of fact whether the playset on the Talan defendants' grassy property was unreasonably dangerous in the first instance, it is unnecessary to further consider whether the alleged hazard—a grassy surface—was open and obvious, or whether the Talan defendants should have anticipated that AK would be harmed, despite the open and obvious nature of that condition. Accordingly, we affirm the dismissal of plaintiffs' premises liability claim against the Talan defendants.

## B. NEGLIGENT SUPERVISION

Plaintiff argues that the Talan defendants may be liable for negligent supervision because they undertook the duty to supervise the children at their daughter's party. We disagree.

In the context of a claim for ordinary negligence, property owners do not have a duty to supervise minor children of guests on their property. *Ji Liang*, 328 Mich App at 311. In *Stopczynski v Woodcox*, 258 Mich App 226, 232, 236; 671 NW2d 119 (2003), this Court adopted the reasoning in the dissenting opinion in *Pigeon v Radloff*, 215 Mich App 438; 546 NW2d 655 (1996), a case having no precedential force or effect pursuant to our Supreme Court's prior order in *Pigeon v Allied Pools & Spas*, 451 Mich 885 (1996). The adopted analysis states:

> When a minor visits the home of another person, three possible situations exist: (1) the minor has been allowed to go there unsupervised, (2) the parents accompany the child and supervise him, or (3) the parents do not accompany the child, but allow the child to go only with the understanding that there will be a responsible adult, such as the premises owner, present to supervise the child because the parents have determined the child is still in need of supervision. In my view, it is only under this third condition, where the premises owner has assumed responsibility for supervising the unaccompanied child, that the premises owner owes a duty to supervise the minor guest and is liable for any negligent supervision. [*Stopczynski*, 258 Mich App at 236, quoting *Pigeon*, 215 Mich App at 449-450 (SAWYER, P.J., dissenting).]

In this case, AK's mother was present at the birthday party when AK fell off the slide. Therefore, the Talan defendants did not have a duty to supervise AK at the party and cannot be held liable for any negligent supervision.

-11-

## C. GROSS NEGLIGENCE AND WILFUL AND WANTON CONDUCT

Next, plaintiff asserts that the Talan defendants' conduct rose to the level of gross negligence, and therefore, the trial court erred by dismissing her gross-negligence claim. We disagree.

The rule that property owners have no duty to supervise their guests' minor children "applies only to claims of ordinary negligence." *Ji Liang*, 328 Mich App at 311. This statement was made to contrast claims of ordinary negligence from premises liability claims, but it also suggests that property owners may be liable for injuries to their guests' minor children if the owners' conduct rises to a level of gross negligence or wilful and wanton conduct. In *Woodman v Kera, LLC*, 280 Mich App 125, 152; 760 NW2d 641 (2008), aff'd 486 Mich 228 (2010), the plaintiff, a child, was injured when he jumped from an inflatable slide at the defendant's "bounce party" facility. *Id*. at 127. The plaintiff, through his mother and next friend, filed a complaint against the defendant, asserting claims of negligence, gross negligence, and violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq*. The defendant argued that it had no duty to supervise the plaintiff because his parents were present in the facility when he was injured. *Id*. at 130. This Court tacitly acknowledged that gross negligence, defined as "conduct that is so reckless that it demonstrates a substantial lack of concern for whether an injury results," could be a permissible theory of recovery for the defendant's failure to supervise children whose parents were present. *Id*. at 152, 156-157 (BANDSTRA, P.J., concurring), 161 (SCHUETTE, J., concurring). However, this Court agreed that dismissal of the plaintiff's gross negligence claim was appropriate under MCR 2.116(C)(10) because the defendant's staff "did undertake certain steps or precautions to prevent injury." Thus, the plaintiff failed to demonstrate "that defendant possessed a substantial lack of concern for the minor child's safety or well-being."[3] *Id*. at 152-153.

Plaintiff argues that jurors could infer that Trudy Talan substantially disregarded the hazards of the playset from her statements, "Isn't it obvious that there is going to be water and there's going to be slides?" and "If parents felt it was dangerous, they should not have come." We disagree that these statements, viewed most favorably to plaintiff, support an inference that the Talan defendants were so reckless as to demonstrate a substantial lack of concern for whether a child would be injured on the playset. It is apparent that Trudy was merely pointing out that AK's parents and other guests' parents knew about the activities at the party and suggesting that they did not regard them as unreasonably dangerous. Plaintiff has not demonstrated that the Talan defendants had any special knowledge or concealed any information involving the safety of the play structure. Indeed, AK's mother could see for herself the height of the playset and the grassy lawn on which it was set and apparently saw no need to prevent her from playing on the structure. And as explained earlier, the structure was placed on a grassy surface, like many other common residential play structures, and there was no evidence that any other child had sustained an injury in the six years between its installation and AK's fall. Reasonable jurors could not find that

---

[3] Our Supreme Court affirmed this Court's conclusion that the parent's preinjury liability waiver was unenforceable because it was not binding on the child plaintiff, but it did not disturb this Court's analysis of the gross-negligence issue. *Woodman v Kera LLC*, 486 Mich 228; 785 NW2d 1 (2010).

allowing AK and other children to play on the play structure during the birthday party, even while also using the hot tub, demonstrated a substantial lack of concern for the young guests' safety.

Plaintiff cites *Taylor*, 241 Mich App 449, in support of her argument that the Talan defendants engaged in "wilful and wanton" conduct. In *Taylor*, this Court held that "a social host is under no duty to make a premises safe for a guest other than to warn the guest of concealed defects that are known to the owner and to refrain from wilful and wanton misconduct that injures the guest." *Id*. at 455-456. The Court concluded that "a social host has a duty to control guests, but only to the extent that the host refrain from wilful and wanton misconduct that results in one guest injuring another guest." *Id*. at 457. The elements for wilful and wanton misconduct are as follows:

> (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*Taylor*, 241 Mich App at 457, quoting *Miller v Inglis*, 223 Mich App 159, 166; 567 NW2d 253 (1997).]

These elements do not directly apply to this case because AK's injury was not caused by another guest's behavior. Furthermore, for the same reasons discussed earlier, the evidence does not support an inference that allowing AK and other children to play on the play structure during the birthday party was "likely to prove disastrous." The Talan defendants had no reason to expect that serious harm would result from the children's ordinary use of the playset mounted on grass.

## D. NUISANCE

Finally, as explained earlier, plaintiff cannot establish that the play structure constitutes either a private or public nuisance. Therefore, plaintiff's nuisance claims against the Talan defendants were also properly dismissed.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel